OPINION OF THE COURT
Robert I. Caloras, J.
The court decides respondent’s motion as follows:
On March 20, 2017, respondent’s motion requesting this court issue an order for special immigrant juvenile status (hereinafter SIJS) was denied, with leave to renew. The basis for denying respondent’s prior motion was failure to provide an affidavit of service upon his mother and a certified copy of his father’s death certificate. The court adjourned this matter to May 22, 2017 for respondent to provide these additional documents; however, on that date respondent was not able to provide these documents. Notwithstanding this, respondent orally renewed his motion for an SIJS finding. The court granted respondent’s request for leave to renew, heard arguments, and denied the motion for the following reasons:
The Immigration and Nationality Act is implemented by the Code of Federal Regulations. SIJS “intertwines uniquely state jurisdiction in family law with uniquely federal jurisdiction in immigration law” {see Angela Lloyd, Regulating Consent: Protecting Undocumented Immigrant Children from Their [Evil] Step-Uncle Sam, or How to Ameliorate the Impact of the 1997 Amendments to the SIJ Law, 15 B U Pub Int L J 237, 238 [spring 2006]). A prerequisite to bringing an SIJS petition before the Department of Homeland Security is that the Family Court issue an order of special findings. Pursuant to 8 USC § 1101 (a) (27) (J) (as amended by the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, *940 Pub L 110-457, 122 US Stat 5044) and 8 CFR 204.11, a special immigrant is a resident alien who, inter alia, is under 21 years of age, unmarried, and dependent upon a juvenile court or legally committed to an individual appointed by a state or juvenile court. Additionally, for a juvenile to qualify for SIJS, a court must find that reunification of the juvenile with one or both of the juvenile’s parents is not viable due to parental abuse, neglect, abandonment, or a similar basis found under state law (see 8 USC § 1101 [a] [27] [J] [i]; Matter of Maria P.E.A. v Sergio A.G.G., 111 AD3d 619 [2d Dept 2013]; Matter of Trudy-Ann W. v Joan W., 73 AD3d 793 [2d Dept 2010]), and that it would not be in the juvenile’s best interests to be returned to his or her previous country of nationality or country of last habitual residence (see 8 USC § 1101 [a] [27] [J] [ii]; 8 CFR 204.11 [c] [6]; Matter of Maria P.E.A. v Sergio A.G.G., 111 AD3d at 620; Matter of Trudy-Ann W. v Joan W., 73 AD3d at 795).
The enactment of the SIJS provision demonstrates Congress’s intent to provide special protection to immigrant children who have experienced maltreatment in their families (see Wendi J. Adelson, The Case of the Eroding Special Immigration Juvenile Status, 18 J Transnat’l L & Pol’y 65, 67 [fall 2008]), and to protect a child who is abused, abandoned, or neglected as well as to provide him or her with an expedited immigration process (see Matter of Hei Ting C., 109 AD3d 100 [2d Dept 2013]). An immigrant child becomes dependent upon a juvenile court when the court accepts jurisdiction over the custody of that child, irrespective of whether the immigrant child has been placed in foster care or a guardianship situation (see In re Menjivar, Case No. A70 117 167 [INS Administrative Appeals Unit, Dec. 27, 1994]). The requirement that a juvenile be dependent upon a juvenile court or, in the alternative, be committed to the custody of an individual appointed by a state or juvenile court ensures that the process is not employed inappropriately by immigrant children who have sufficient family support and stability to pursue permanent residency in the United States through other, albeit more protracted, procedures (Matter of Hei Ting C.). In Matter of Hei Ting C., the Court held
“that allowing Family Court proceedings which are not related to [adoption,] custody and guardianship matters to serve as a vehicle for obtaining SIJS special findings would not further the underlying *941 policies behind the SIJS scheme, i.e., to protect abused, neglected, and abandoned immigrant children, and would also risk opening the door to abuse of the SIJS process” (109 AD3d at 108).
Consequently, the Court in Matter of Hei Ting C. determined that a child support proceeding does not satisfy the SIJS requirement that a child be dependent upon a juvenile court.
Here, on November 2, 2015, this court issued an order of disposition placing respondent on probation for a period of 12 months under docket No. D-15224-15, and to cooperate with Every Child Has an Opportunity to Excel and Succeed (a community based supervision program) and New York Foundling. On May 19, 2016, the Department of Probation filed a violation petition (hereinafter VOP), under docket No. D-15224-15/16A, alleging that respondent violated two conditions of his probation by having been arrested on February 10, 2016 and failing to attend school regularly. On June 2, 2016, respondent was arraigned on both the VOP and the new arrest, under docket No. E-10564/16. On June 9, 2016, respondent made an admission to an assault in the second degree (Penal Law § 120.05 [6]), under docket No. D-10564/16,* which was based on the February 10, 2016 arrest. As a result of this admission, the court made a finding that respondent had violated the terms of his probation. On July 13, 2016, this court ordered a disposition of 18 months non-secure placement for docket No. D-10564/16, and probation was extended for 12 months on the VOP. The court further notes that on May 23, 2017, this court issued a warrant for respondent’s arrest because he voluntarily left the non-secure facility in violation of this court’s order.
Respondent claims that this court’s order of disposition, placing him in a non-secure facility, sufficiently establishes a dependency upon this court for an SIJS finding. Respondent bases this on Social Services Law § 371 (7) which defines a “dependent child” as “a child who is in the custody of, or wholly or partly maintained by an authorized agency or an institution, society or other organization of charitable, eleemosynary, correctional, or reformatory character.” In further support, respondent notes that a memorandum issued by the United States Citizenship and Immigration Services (USCIS) on March 24, 2009 stated, inter alia, that “petitions that include juvenile court orders legally committing a juvenile to or plac *942 ing a juvenile under the custody of an individual or entity appointed by a juvenile court are now eligible” (USCIS Memo HQOPS 70/8.5 at 2 [Mar. 24, 2009]). Although not included in respondent’s motion, the court notes that the March 24, 2009 USCIS memorandum goes on to state the following:
“For example, a petition filed by an alien on whose behalf a juvenile court appointed a guardian may now be eligible. In addition, section 235(d)(5) of the TVPRA 2008 specifies that, if a state or an individual appointed by the state is acting in loco paren-tis, such a state or individual is not considered a legal guardian for . . . SIJ eligibility” (id.).
This court declines to adopt respondent’s position, and finds that a placement in a juvenile delinquency matter does not satisfy the dependency requirement necessary for an SIJS finding as set forth in 8 USC § 1101 (a) (27) (J) and 8 CFR 204.11.
First, there exists no appellate authority in this State to support a finding that a juvenile delinquency proceeding constitutes a dependency upon the Family Court for special findings in an SIJS matter. Second, such determination would circumvent the legislative intent behind the SIJS statute, and would not further the underlying policies or legislative intent of the SIJS statute. Expanding SIJS to include juvenile delinquency matters would put this court in the untenable position of rewarding immigrant children for committing acts, which if done by an adult, would constitute a crime under the Penal Law—a reward not available to a law abiding immigrant child, and an intent this court is not willing to ascribe to Congress.
Significantly, under the Illegal Immigration Reform and Immigrant Responsibility Act an adult who is not a U.S. citizen and pleads guilty to certain criminal offenses may be subject to mandatory deportation. Moreover, Criminal Procedure Law § 220.50 (7) mandates that a court advise a noncitizen defendant of the deportation consequences of his or her plea to a felony offense. It is inconceivable that Congress would seek to deport an adult criminal, yet give special immigrant status to a juvenile delinquent. This court finds that to grant respondent’s request, simply because he is under this court’s placement order, would disparage the very laudable intent of 8 USC § 1101 (a) (27) (J). Clearly, the facts and circumstances of respondent’s history do not fit within the legislative scheme of the SIJS statute, which is concerned with providing special protection to immigrant children who have experienced *943 maltreatment in their families (.Matter of Hei Ting C.). Respondent’s placement in a non-secure facility stemmed from his admission to an assault in the second degree (Penal Law § 120.05 [6]). Granting an SIJS finding to this respondent is not only contrary to the intent of the SIJS statute, but also does not promote the legislative intent behind article 3 of the Family Court Act which did not envision respondents deriving a benefit from their bad acts. For these reasons, this court declines to expand the definition of dependency upon the court for an SIJS finding to include juvenile delinquency placements.
Under the circumstances herein, respondent’s request for an SIJS finding is denied.

 Upon respondent’s admission, docket No. E-10564/16 was amended to D-10564/16.